The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* SUSSEX PRINT WORKS (No. 3216)[1]

[1] T. D. 43686.

United States Court of Customs and Patent Appeals, November 4, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles*, special attorney, of counsel), for the United States.
*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellee.

[Oral argument October 17, 1929, by Mr. Lawrence and Mr. Place]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The classification controversy involved here arose over the dutiable status of imported merchandise described in the appraiser's answer to protests Nos. 24622 and 27637 as follows:

No. 24622. The merchandise consists of copper rollers 56 inches long by 16 inches in circumference, "W" bore. These are plain hollow copper rollers with a slat on the inner side. They are ready for engraving and when engraved are print rollers for printing silk or cotton. As print rollers are provided for as such at 60% ad valorem under par. 396, these unfinished print rollers were returned for duty as manufactures of metal at 40% ad valorem under par. 399. They are not fitted for any other purpose than to make print rollers.

No. 27637. The merchandise in question is described as engraved copper rollers, 48'' long by 16'' in circumference, "W" bore, and consists of rollers composed in chief value of copper, engraved with designs and used in printing designs on cotton, silk, or other materials, and is not of the class of rollers covered by abstract 50445. It was returned for duty at 60% ad valorem under the specific provision for print rollers in paragraph 396, act of 1922.

The merchandise was claimed by the importer to be dutiable under that portion of paragraph 372 of the Tariff Act of 1922 which reads as follows:

PAR. 372. * * * all other textile machinery or parts thereof, finished or unfinished, not specially provided for, 35 per centum ad valorem.

The court below sustained the protest upon the theory that the quoted provision of paragraph 372 was "predicated solely upon use" and took precedence over the general provisions of paragraph 396 the print-roller paragraph.

If the merchandise is covered by the provisions of paragraph 396 and also by the quoted provisions of 372, we think "print rollers" is more specific than "all other textile machinery or parts thereof, finished or unfinished, not specially provided for," and that since paragraph 396 is a designation also by use the provisions of paragraph 372 could not be said to take precedence. Paragraph 396 reads as follows:

PAR. 396. Print rollers and print blocks used in printing, stamping, or cutting designs for wall or crêpe paper, linoleum, oilcloth, *or other material*, not specially provided for, composed wholly or in chief value of iron, steel, copper, brass, or any other metal, 60 per centum ad valorem.

This appeal involves two protests. One is directed towards the classification of the finished print roller and the other towards the print roller ready for engraving, but, in its imported condition, an unfinished roller.

It will be noted that paragraph 372 provides for finished or unfinished parts of textile machinery. It seems to be conceded that both articles under consideration are parts, finished or unfinished, of textile machinery. Paragraph 396 provides for print rollers but has no provision for parts.

The Government argues that the parts have been dedicated to the sole use of making rollers and are in fact unfinished rollers and, therefore, are covered by the provision "print rollers" and contends that the decision of the Circuit Court in *United States* v. *Riga,* 171 Fed. 783, involving forged rifle barrels, rough-bored, is controlling. The court there held that the barrels were for use as parts of rifles and suitable for use for no other purpose and were, therefore, dutiable under the provision of paragraph 157, Tariff Act of 1897, as "rifles and parts thereof." Since the provision there was for rifles and *parts thereof*, it is easy to distinguish that case from the case at bar where paragraph 396 has no provision for parts.

An examination of the legislative history of this provision convinces us that Congress intended that paragraph 396, *supra*, should cover finished print rollers for use in printing silk and would not include unengraved rollers. Paragraph 396 is a new provision in tariff legislation.

The National Print Cutters' Association of America, while the House of Representatives had under consideration the bill which ripened into the Tariff Act of 1922, asked for a special classification

of print rollers and print blocks, a part of the information which they gave being as follows:

> The National Print Cutters' Association respectfully submits to the Committee on Ways and Means that print rollers and print blocks used in the manufacture of wall paper, etc., belong properly under Schedule C, instead of Schedule D, and should receive a special classification thereunder.
>
> At present the print roller or block is classified under the general heading of Schedule D, "Wood and manufactures of." This is an error which finds its source in the idea that the wooden cylinder roller or block is the subject upon which the workman carves or works out his design.
>
> On the contrary, the wood used is merely a background or support, on which the workman carries out his design by working in brass, which brass is merely hammered into or affixed to the wood. When the design is completed it stands out from the wood and consists of a raised brass design. The wood is a negligible part of the finished design and contains no carving or design work of any kind, the component material of chief value being the metal.
>
> A committee of this association had the pleasure of showing a small sample of a print roller to the members of the Committee on Ways and Means.
>
> It is respectfully submitted that print rollers and print blocks *used in printing wall paper, crêpe paper, linoleum, shelf oilcloth, silk, cretonne, and rollers or blocks containing designs made from steel and used in cutting out wall paper borders and cutting out linoleum in the making of inlaid linoleum* should receive a distinct classification under Schedule C.

It will be observed that the association asked for the special tariff treatment of print rollers used in printing "wall paper, crêpe paper, linoleum, shelf oilcloth, *silk, cretonne,* and rollers or blocks containing designs made from steel and used in cutting out wall paper borders and cutting out linoleum in the making of inlaid linoleum."

The Committee on Ways and Means inserted the provision in H. R. 7456 in the form it now appears, except that the rate was 30 per centum ad valorem. The Senate Finance Committee amended the provision by striking out "30" and inserting "45." The Senate inserted "60" instead of "45." When this amendment was before the Senate, the chairman of the committee, Senator McCumber, in explaining the amendment, showed that it was for the protection of the engravers who engraved the printing design upon the print rollers, but confined his remarks for the most part to print rollers used for making wall paper. The provision in the House bill for "wall or crêpe paper, linoleum, oilcloth, *or other material*" remained unchanged.

The testimony of Harry T. Rounds, the only witness introduced by the importer in the court below, attempted to distinguish between an engraving on a print roller used for printing silk and one used for printing wall and crêpe paper and other articles, by saying that engraving wall-paper print rollers did not require the high degree of skill which was required for engraving print rollers for printing silk. He stated that he had seen these different types of rollers (referring to those used for crêpe paper, wall paper, linoleum, and silk) at the engravers here in the United States, and that there was a wide differ-

ence between them consisting in the fact that for the coarser work like printing linoleum or wall paper the engraving was coarser and used more ink and did not require as much skill in the engraving process. He was asked the following questions and made the following answers:

Q. Have you been in the plants of engravers that engrave your shells or rolls with the patterns which you desire to have put on them?—A. I have, sir.

Q. You have seen them work?—A. Yes, sir.

Q. Have you seen them produce at the same time rollers which are to be used for the printing of linoleum or oilcloth or wall paper?—A. Yes; I have.

It is at once apparent that the engravers were not only concerned with the separate classification and distinct rate of duty upon rollers which they engraved for the purpose of printing linoleum, oilcloth, and wall paper, but also with those which they engraved and which were used for printing silk. Congress, in the preparation of the paragraph, did not name all the different purposes for which the rollers were used but contented itself by saying "used in printing, stamping, or cutting designs for wall or crêpe paper, linoleum, oilcloth, *or other material.*"

In our view of the case the rule of *ejusdem generis*, regardless of its general applicability to terms of that character, does not control here, and finished print rollers for the printing of figures on silk are provided for in the paragraph and we so hold.

Attention is again called to the fact that there is no provision in paragraph 396 for the unfinished roller or for parts, finished or unfinished. This would seem to be in entire harmony with the theory that Congress was carrying out the wishes of the Print Cutters' Association and that it did not concern itself with the unfinished print roller which had no engraving process applied to it and omitted any provision for it in the paragraph.

In argument before this court the Government suggests that it would be an anomalous result to hold that the finished print roller was properly dutiable under paragraph 396, while the unfinished and unengraved roller was dutiable under paragraph 372 as unfinished parts of textile machinery. In our view of the case no anomalous condition arises from this construction. It was the finished engraved roller upon which the higher rate was sought and this article was taken out of the provision for textile machinery and parts thereof and the unfinished article was left in the paragraph.

We, therefore, hold that the unfinished roller is properly dutiable at 35 per centum ad valorem under the quoted part of paragraph 372 and the finished roller dutiable under paragraph 396. The judgment of the court below must, therefore, be *reversed* as to the finished print rollers and *affirmed* in all other respects, and the case *remanded* for further proceedings in conformity herewith.